## RICHARD H. RAWLINGS *vs.* THE STATE OF MARY-
### LAND.

A party was convicted under the act of 1817, ch. 227, which prohibits licensed retailers, &c., in certain counties, from permitting free negroes and slaves to be in their stores at night.   A motion in arrest of judgment, upon the ground that the indictment did not sufficiently describe the offence, was overruled by the court, and the fine prescribed by the act imposed upon the traverser, who *appealed* from the judgment.   On motion to dismiss this appeal, because the record was not brought up by *writ of error*, it was HELD, that an *appeal* will lie, such a case being within the provisions of the act of 1785, ch. 87, sec. 6.

The act of 1817, ch. 227, applies both to licensed retailers and persons accustomed to make and sell distilled spirits or other liquors without license, and an indictment under this act, describing an offender as a licensed retailer, is sufficient.

The offence is defined and punished in the first and second sections, and an exception is contained in a proviso to the seventh section, that the law shall not apply to travellers putting up or stopping whilst travelling through said counties.   HELD: that this exception need not be negatived in an indictment under this act.

The first section contains a proviso that the law shall not apply to slaves having a written order from their owners.   This license must be negatived in the indictment.

It is not always necessary to negative exceptions contained in the act creating the offence, but where exceptions are in the enacting part of the law they must be negatived.

If a party undertakes to recite a statute and mistakes a *material point*, it is incurable, but if he recites truly so much as will serve to maintain his action, and mistakes the rest, this will not vitiate the declaration.

Every fact and circumstance laid in an indictment which is not a necessary ingredient in the offence, may be rejected as surplussage, and if there be any defect in the *manner of stating such matter* it will not vitiate the indictment.

It not being necessary to negative the exception contained in the proviso to the seventh section of this act, a mistake in reciting this proviso does not vitiate the indictment.

Where there is a misrecital of a public act which need not be set out, and the indictment would be good without it, if the indictment conclude " contrary to the form of the act in such case made and provided," the recital may be rejected as surplussage, but otherwise if the act be referred to in the conclusion as the " *said statute.*"

If this indictment had specially referred to the act of 1817, reciting the first

section correctly but misreciting the seventh, the general conclusion, " contrary to the form of the statute in such case made and provided," would have cured the defect.

The act of 1817, ch. 227, is not a private statute but a public local law, relating to the administration of justice in three of the counties of the State, and need not be recited at length in an indictment.

A party indicted under this act may submit his case to be tried by the court. There is nothing in the fourth section of this act which authorises the inference, that cases arising thereunder must necessarily be tried by a jury.

The act of 1809, ch. 144, puts the court, in cases submitted to them for trial, in the place of the jury on the question of the innocence or guilt of the accused, and at the same time gives them power to hear evidence in mitigation of the offence, and to decide and pronounce judgment accordingly. It is a power conferred on the courts for the benefit of the accused, to be exercised only at his election.

It is well settled, that where a jurisdiction is once conferred it cannot be ousted by implication.

In this case the traverser pleaded not guilty, and thereupon submitted to the court for trial. HELD: that a technical joinder of issue on the plea of not guilty is unnecessary in such a case.

Such a joinder of issue need not appear on the record in jury trials, before courts of oyer and terminer and gaol delivery, and the act of 1809, ch. 144, confers the same power upon the county courts, as was formerly possessed by the court of oyer and terminer, but materially enlarged for the benefit of the accused, and there is no reason why the same forms of proceeding should not be observed in both courts.

If a formal issue were allowed it might have the effect, in strict principles of pleading, to narrow the court's inquiry to such matters only as are cognizable by a jury, and deprive the accused of the advantage designed for him by the legislature in opening the whole case upon the submission.

The proceedings against a party, under the act of 1817, must be in the name of the State; he must be fined in the name of the State, and it is no objection to a judgment upon an indictment under this act, of which the traverser can avail himself, that it adjudges the fine to the State, and does not award the one-half to the informer as prescribed by the act.

The traverser is only interested in having the proceedings so conducted as to protect him against a second prosecution, and where he is not injured by the form of the judgment it will not be reversed at his instance.

APPEAL from Calvert county court.

The appellant was indicted for a violation of the act of 1817, ch. 227. The indictment was as follows:

"The grand jurors of the State of Maryland for Calvert

county, upon their oaths do present, that Richard H. Raw-lings, late of said county yeoman, on the eleventh day of January, in the year one thousand, eight hundred and forty-nine, at the county aforesaid, (the said Richard being then and there a licensed retailer,) did suffer a negro slave named Charles, the property of one John Mad, to be in his store-house, wherein he, the said Richard, was then and there accustomed to sell a certain distilled liquor, commonly called whiskey, then and there situate, about the hour of nine, between sunset in the evening of the same day and sunrise of the succeeding morning, (the said slave then and there not having a written order or license for that purpose from his said master or from his mistress, owner, or other person in whose employment the said slave then and there actually was, with the consent of his said owner, and the said slave not being then and there employed as a wagoner, or by a traveller putting up or stopping whilst travelling through said county,) against the act of Assembly in such case made and provided, and against the peace, government and dignity of the State."

To this indictment the traverser pleaded not guilty, and submitted himself to the court for trial, by whom he was tried and found guilty, and adjudged "to forfeit and pay to the State of Maryland the sum of $50 for the offence aforesaid, according to the force, form and effect of the act of Assembly in such case made and provided." The record does not state that issue was ever joined in the case. The appellant moved in arrest of judgment, upon the ground that the offence charged in the indictment is one created by special statute, and that the indictment does not sufficiently describe the said offence. This motion the court overruled, and the traverser then appealed from the judgment so as aforesaid rendered against him.

A motion was made in this court to dismiss the appeal, because the record was not brought before the court upon a writ of error. This motion was argued at December term 1851, and was overruled by the court, Tuck, J., delivering the opinion, which is reported in 1 *Md. Rep.*, 127.

The act of 1817, ch. 227, is entitled, "An act for the better protection of slaveholders in the several counties therein mentioned." The first section provides: "That from and after the first day of May next, it shall not be lawful for any licensed retailer or retailers in Calvert county, Anne Arundel county, and St. Mary's county, or for any person or persons residing in either of those counties, accustomed to make and sell distilled spirits or other liquors, to suffer any free negro or mulatto, or any negro or mulatto servant or slave, to be in his, her or their storehouse, or other house wherein he, she or they may be accustomed to sell distilled spirits or other liquors between sunset in the evening and sunrise of the succeeding morning, *provided always,* that nothing herein contained shall be construed to extend to the case of such aforesaid servant or slave, as shall have a written order or license for that purpose from his master, mistress, overseer, or other person in whose employment he may actually be, with the consent of his owner or owners."

The second section provides: "That the person or persons so offending shall forfeit and pay for every such offence the sum of $50, the one half to the informer, and the other half to the said county, in case such mulatto or negro was free, and the one half to the informer, and the other half to the master, mistress or owner, in case such negro or mulatto was a servant or slave at the time the offence was committed, to be adjudged and recovered on indictment and conviction, or confession of the party accused in the county court of said counties."

The third section provides: "That if on the conviction aforesaid, the person or persons so convicted" shall be unable to pay the fine imposed, the court may order confinement in goal for a term not exceeding three months.

The fourth section provides: "That in all prosecutions that may be had under the aforegoing provisions of this law, it shall be proved to the satisfaction of the petit jury who shall try the issue joined, that a free negro or slave," &c., was in any store within the time prohibited, such evidence shall be

sufficient to establish the fact that he was permitted to be there by the possessor or occupier of the store, &c.

The seventh section, after directing this law to be given in charge to the grand jury, adds by way of proviso: "That nothing herein contained shall be construed to extend to negroes or mulattoes employed as wagoners, or travellers putting up or stopping whilst travelling through said counties."

The cause was argued before LE GRAND, C. J., ECCLESTON, MASON and TUCK, J.

*Hagner* for the appellant, argued that the judgment should have been arrested:

1st. It is not alleged that the traverser "was accustomed to make and sell distilled spirits," &c., in the words of the statute.

This being an indictment upon a penal statute, it must strictly pursue the statute. *Dwarris on Statutes*, 667, 736, *side-pag.* *Wharton's Criminal Law*, pp. 91, 92. *Bac. Ab., Indict., H,* 3. *Bac. Ab., Stat. L,* 5, pp. 398, 399, *side-pag.*

It is not alleged that the negro Charles "was not a traveller putting up or stopping," &c. The indictment charges, that "the said slave was not then and there employed as a wagoner, or by a traveller whilst travelling through said county," &c. The proviso in section seventh, evidently intends to apply to the case of negroes who were travellers themselves, and not to the case of negroes employed by travellers. The proviso intended to allow retailers, &c., to permit their houses to be used as places of shelter for the night by negro wagoners, and also by such negroes as might be lawfully travelling through the counties named. Unless this construction is correct, a free negro or slave sent by his master upon a journey, would be denied admittance to all taverns in those counties, and might actually perish by exposure. As far as the record shows, such may have been the case in the present instance: the negro may have been a traveller himself, though not employed by a traveller.

If the construction in the indictment is the correct one, then

the proviso was unnecessary, because, if the negro was "em-
ployed by a traveller," he, of course, would be present with
the traveller, and would therefore have his permission to be
in the house. The fact that he thus had the employer's per-
mission, would sufficiently exempt the tavern keeper without
the insertion of the proviso. The court are bound to presume
that the proviso was inserted for some rational purpose, and
the design of the legislature in inserting it, must have been
to except persons not excepted in the previous sections of the
law; and those persons are negroes who are employed as
wagoners, and negroes travelling through the counties named
in the law. It would have been no offence for a tavern keeper
to allow the slave of a guest putting up at his inn, "to be in
his house wherein he was accustomed to sell liquor," &c.,
even if the seventh section had not contained the proviso.
Such slave, of course, would have had the permission and
license of the traveller by whom he was employed, and the
previous sections of the law declare, that this license or per-
mission shall exculpate the tavern keeper from all blame.
The legislature could not therefore have intended, that the
proviso in the seventh section should be merely a repetition
of the previous clauses of the law. They must have intended
to speak of persons not previously referred to, and must have
meant to allow a shelter to be given to negroes or slaves, who
might be travelling either upon their master's business, or by
their master's permission upon their own.

That it is necessary to negative the exceptions in the pro-
viso, is clear. 1 *Burr.*, 609, *Rex vs. Little*. 2 *Pick.*, 103,
*Commonwealth vs. Samuel*. 1 *Walker*, 409, *State vs. Craft*.
24 *Pick.*, 374, *Commonwealth* vs. *Thurlow*. 5 *Halst.*, 293,
*State vs. Webster*. 1 *Broken. C. C. R.*, 162. 2 *Cranch.*, 33,
*Pennington vs. Coxe*. 2 *Cranch.*, 358, *U. S. vs. Fisher, et al.*

But if it were not essential, since the State has attempted
to recite the proviso, the misrecital is fatal. *Bac. Ab., Stat.*,
*L*, 5, *pp*. 398, 399, *side-pag.*, and the authorities there quoted.

Any defect in the description of a statutory offence, will
not be aided by verdict. *Wharton's Crim. Law, p*. 93.

This act is in opposition to the common law, the meaning therefore should not be extended or strained beyond the words. *Dwarris on Statutes, p.* 696, *side-pag.*

The court will construe the law, according to its import, without respect to its policy. *Dwarris,* 703, 707–8, *side-pag.*

The same author defines a private statute to be one relating to one or divers particular counties, p. 629. If this is a private act it should be recited at length.

2nd. Because it does not appear from the record, that issue ever was joined in this case. The record shows, that the traverser pleaded not guilty, but the State never joined issue. It is equally clear, that unless it appears from the record that issue was joined, the judgment will be arrested. *Wharton's Crim. Law, p.* 618, 134. *Wilkinson's Admr. vs. Bennett,* 3 *Munf.,* 314. *Kerr vs. Dixon,* 2 *Call,* 319. *Taylor vs. Huston,* 2 *Hen. and Munf.,* 161. 4 *Black. Com.,* 339, *side-pag. and Appendix, sec.* 1. 2 *Harris' Entries,* 95. 2 *U. S. Digest, pp.* 658 *and* 9, *secs.* 465, 514.

3d. Because it appears from the record, that this case was tried and determined by the court below, instead of by the jury, whereas the court had no jurisdiction so to act in the premises. The fact that the traverser submitted his case to the court does not estop him from objecting to the want of jurisdiction; non-consent cannot confer jurisdiction. *Moultrop vs. Bennett, Kirby,* 351. 2 *U. S. Digest, p.* 675, *sec.* 17, and the authorities there cited. *Quynn vs. State,* 1 *H. & J.,* 36. 1 *Chitty's Crim. Law,* 431, *side-pag. Miller vs. The Lord Proprietary,* 1 *H. & McH., p.* 543.

It seems clear from the language of the 4th section of the act, that the petit jury alone have the power to try the offences created by the 1st section. These words are express, "in all prosecutions that may be had under the aforegoing provisions of this law, (if) it shall be proved to the satisfaction of the petit jury, who shall try the issue joined," &c. There is here a studied exclusion of the idea that the court may hear such cases. And the reason of the thing is apparent. The jury, when it renders the verdict of guilty in such a prosecution,

in fact fixes the penalty, for it is uniform, and the court have no discretion in the matter. There is only one case in which any authority is given to the court by the act, and that is, the instance mentioned in sec. 3. Where, if after conviction, the party who shall be unable to pay, &c., the court may change the punishment to imprisonment. The act evidently designed to surrender the whole jurisdiction to the jury.

The word "conviction," used in the 2nd and 3rd sections, shows still further the intention of the legislature, its legal import being the verdict of the jury, or confession. "If the jury find him guilty, he is said to be convicted of the crime whereof he stands indicted; which conviction may accrue in two ways, either by his confessing the offence and pleading guilty, or by his being found so by the verdict of his country." 4 Black. Com., 362, side-pag.

So in civil cases, where the jury alone are accustomed to be the triers. The phrase is, "whereof he is convicted, as appeareth by the record," &c.

The court will presume that this word is used in its legal sense, especially where this presumption will serve to dispel a doubt in reference to another section of the act.

It may be contended, that the court below possessed the general power to try a case like the present, notwithstanding, the act contemplates the trial by the jury alone. But if the court possessed a constitutional power to try all cases in which a jury might sit, still, where a statute creates a new offence, and prescribes a particular jurisdiction for its punishment, no other jurisdiction can interfere. 1 Chitty's Crim. Law, p. 163, side-pag. 4 Mod., 144. Castle's case, Cro. Jac., Criswell vs. Clugh, 3 Watts, 330. Bunn vs. Commonwealth, 3 Serg. & Rawle., 273.

The acts concerning submissions, were 1781, ch. 11, 1787, ch. 34, and 1793, ch. 57, sec. 19. The existing law upon the subject is contained in the act of 1809, ch. 144, which enacts, that it may be lawful for any person indicted to submit his case to the court, &c. The act of 1817, ch. 227, abridges this general power of the courts to receive submis-

sions, for after creating a new offence it enacts that the jury shall try it, and gives no such power to the court. It does not expressly repeal the act of 1809 to this extent, neither does the act of 1809 expressly repeal the 19th section of 1793, ch. 57, which says, the jury shall try all controverted facts, notwithstanding the submission. But as the act of 1809 says, that the courts may decide "all the merits of the case," it virtually repeals the 19th section of 1793, ch. 57. In the same manner, the act of 1817, directing that the jury shall try the offence thereby created, virtually repeals so much of the act of 1809, ch. 144, as might otherwise give a coextensive power to the court in this case.

4th. At this stage of the case, the court will look through the whole record, and notice any errors apparent upon its face.

The judgment in this case is evidently improper, and will not be affirmed. The record says, that "it is considered by the court here," &c., "that the said Richard H. Rawlings be fined, forfeit and pay to the State of Maryland, the sum of $50," &c. The act of Assembly, (sec. 2,) prescribes a different punishment for the offence: "the person so offending, shall forfeit and pay for every such offence, the sum of $50, one-half to the informer, and the other half to the master," &c., "in case such negro," &c., "was a slave." The judgment pronounced by the court was, therefore, without any warrant in law, and cannot be affirmed.

*Robert J. Brent* for the State, contended for an affirmance of the judgment.

1st. because the traverser being "a licensed retailer" is sufficiently designated.

2nd. Because the offence is fully described when the indictment alleges, that he "did suffer a negro," &c., "to be in his storehouse, wherein he," &c., "was accustomed to sell," &c., "between the hours of sun-set and sun-rise," &c.

3rd. Because the absence of permission is sufficiently set forth in the indictment, when it is alleged that the party being

a slave, &c., "not having a written order or license for that purpose, from," &c., "and the said slave not being then and there employed as a wagoner, or by a traveller," &c.; but these last words are not required by the act of 1817, chap. 227.

4th. That the statute is sufficiently set forth, 1st *Iredell*, 424, by the indictment following the words of the statute. *Wharton Crim. Law*, 92, 93.

5th. The non-joinder of issue is cured by verdict and judgment. *Wharton Crim. Law*, 618.

6th. That the plea of not guilty is a joining of issue.

7th. Because the court below had jurisdiction to try the case on the submission of the party indicted.

This jurisdiction is expressly confirmed by statute, and is daily practiced in all the courts of Maryland. See 1809, ch. 144. 12 *G. & J.*, 260.

TUCK, J, delivered the opinion of the court.

The motion to dismiss this appeal having been overruled, we are now called upon to decide the various points suggested on the motion in arrest of judgment.

This indictment was found under the act of 1817, ch. 227, which prohibits licensed retailers and persons accustomed to make and sell distilled spirits, in Calvert, St. Mary's and Anne Arundel counties, from allowing negroes to be in their storehouses between sun-set and sun-rise, except as therein provided. The first and seventh sections contain the offence and the exceptions.

It is alleged, that the indictment is defective in not stating that the traverser was accustomed to make and sell distilled spirits; and also, in not stating that the negro was not a "traveller putting up or stopping while travelling through the county," as mentioned in the seventh section.

The penalties in the act are directed against two classes of persons, viz: licensed retailers and persons accustomed to make and sell distilled liquors. This party is described as a licensed retailer, which we think sufficient. The act applies

to both licensed retailers and persons accustomed to make and sell distilled spirits or other liquors, without a license.

It is supposed that the indictment is bad, because it does not allege that the negro, "was not a traveller putting up," &c. This exception is contained in a proviso to the seventh section of the act, the offence being defined and punished by the first and second sections. It is not always necessary to negative exceptions contained in the act creating an offence. 1 *Ch. Cr. Law*, 283. The Court of Appeals has stated some of the rules in *Bode vs. State*, 7 *Gill*, 330. But, as more particularly applicable to this case, we must distinguish between an exception contained in the enacting clause and one introduced by way of proviso to a subsequent section. An exception in the purvieu must be negatived, a proviso need not be. *Dwarris on Statutes*, 661. And Lord Mansfield in *Rex vs. Jarvis*, reported in a note to the case of *King vs. Stone*, 1 *East.*, 644, said, "what comes by way of proviso must be insisted on for purposes of defence, but where exceptions are in the enacting part of the law, the indictment must charge that the defendant is not within any of them." 12 *Gill and Johns*, 262. 9 *Bac. Abr.*, *Statute L.*, sec. 3, *Bouvier's Ed.*, 1846. *Archb. Crim. Plead.*, 52.

In the case in 7 *Gill*, the court held, that the party must be described as a licensed retailer, because it was apparent from the whole act, that it was designed only to apply to such persons. It was not the case of an exception in favor of particular persons, contained in a section not defining the crime, as this is, but the character of the offence could be gathered only from the entire statute. The persons exempted from the operation of this act are mentioned in the *first* and *seventh* sections. The Court of Appeals, in 1 *Gill*, 59, *State vs. Nutwell*, decided, that it is necessary to negative a license to the negro, according to the first section, although contained in a proviso to that section; but it does not follow, that the indictment is defective when the exception contained in the proviso to the *seventh* section is not also negatived. Indeed, it may be strongly inferred from that case, that no such neces-

sity exists, because that indictment was open to the same objection that is made here, but it was not noticed, either in argument or by the court, and we hardly think that such a point would have escaped notice if it had been deemed available to the defendant.

But then it is said that the State having undertaken to set out this exception in the statute, must do so truly. It is not every misrecital that is fatal. The mistake must be in something material to the plaintiff's case. In 2 *Mod.*, 99, it is said, "if a party undertakes to recite a statute, and mistakes in a material point, it is incurable; but if he recites so much as will serve to maintain his own action, truly, and mistakes the rest, this will not vitiate the declaration." It is sufficient, if enough be stated, to bring the case within the statute, or to charge the defendant. *Willes*, 210, 7 *Gill*, 330. "Every fact and circumstance laid in an indictment which is not a necessary ingredient in the offence, may be rejected as surplussage; also, if there be any defect in the *manner of stating such matter* the defect will not vitiate the indictment." *Archb. Cr. Pl.*, 42.

Here the offence is created by the first section of the act. As to the exceptions therein contained, and necessary to be negatived, according to *State vs. Nutwell* the indictment is good and can be impeached only by invoking the seventh section. We have seen that it is unnecessary to plead this part of the act, because not an essential ingredient in the offence; and therefore, upon the authorities last quoted, the alleged mistake, (the insertion of the word "by,") is not fatal.

In 1 *Chitty's Cr. Law*, it is said, "If any defect arise in the recital of a public act which there was no occasion to set out, and the indictment would be good without it, if the indictment conclude generally "contrary to the form of the statute in such case made and provided," the recital may be rejected as surplussage, and judgment may be given against the defendant; but otherwise, if it be referred to in the conclusion, as "the *said* statute," 276–7, 281. The reason assigned is, that in one case the court is tied down by the terms

of the indictment to a particular statute, and if none such exist, there can be no conviction, whereas, under the general conclusion, they may look, judicially, to any statute by which the indictment can be maintained.    If, therefore, there had been in this case special reference to the act of 1817, setting out the first section correctly, but misreciting the seventh, the general conclusion would have obviated the present objection.

We have examined the cases referred to by the appellant's counsel on this point, and do not find that they conflict with our view of the question.

It is also insisted, that this being a private act, should have been set out at length; and *Dwarris*, 629, is referred to, where he says, " acts relating to divers particular counties" are private laws.   For this he gives us no case or authority whatever.    No doubt there are statutes relating to particular counties which are private, and not public acts, but as a general proposition this cannot be correct.   And, indeed, in almost the next sentence he says, "though an act be of a private nature, (as if it concern a particular mystery or trade,) yet, if a forfeiture be reserved to the king, it is a public statute;" and in his classification of statutes he speaks of public general acts and *public local* acts, (page 628.)   This act relates to the administration of justice in three of the counties.   The act of 1818, ch. 184, extends its provisions to five others.   The object was to to regulate certain classes of persons in their dealings with negroes and slaves, as well for the better government of this portion of our population, as to promote peace and order in the community; and to these ends it exacts a forfeiture for the benefit of the county, recoverable on indictment, and in certain cases imprisons the party.   On a question like the present, a forfeiture to the county is equivalent to one reserved to the State.   The proceeding must be by indictment, and, of course, in the name of the State, and the judges are required to notice judicially, and to give the act in charge to the grand juries.   If these qualities are not sufficient to place it in the class of public local laws, we

are at a loss to conjecture how one would be framed to attain that object. And, besides, there are many acts limited in their operation to particular counties, which, like the present, have generally, if not always, been enforced as public laws, without regard to the forms requisite in pleading private statutes.

It is also objected that the traverser was tried by the court, when the jury alone is authorised to pass upon the indictments found under this act of Assembly. By the act of 1793, ch. 57, sec. 19, a party indicted was authorised to submit his case to the court; but this act, on the part of the accused, was so far a confession of the crime alleged against him, as to charge him with the costs of prosecution, even if he escaped the punishment prescribed for the offence. For the purpose of saving time and expense, (as we are informed by the act of 1809, ch. 144,) persons indicted were authorised, in their discretion, to submit to the court, without incurring the effect of the confession implied under the act of 1793, and, on the submission, the courts were authorised to hear and decide on the "whole merits of the case." In effect the court was put in the place of the jury on the question of innocence or guilt of the party, at the same time that they might hear evidence in mitigation of the offence, and decide and pronounce judgment accordingly. It is said that this power is taken away by the *fourth* section of the act of 1817, in prosecutions arising under that act. The authority here given to the courts is for the benefit of the accused. It is to be exercised only at his election, and in the event of his choosing to waive the trial by jury. This mode of trial is cheaper and more convenient, and in many instances dispenses with forms necessary in jury trials. Looking to the design and effect of this proceeding, we should hesitate to interfere with the exercise of the power, even upon the strongest and most necessary inference from the words of the act of 1817. But we think that there is no ground for any such conclusion, even if a jurisdiction once conferred could be ousted by implication, which, it is well settled, cannot be done.

Rawlings *vs.* The State.

Another reason assigned is, that it does not appear that issue was joined on the plea of not guilty. Whether this objection would avail if the case had been tried before the jury we need not decide. It is certainly unnecessary for this to appear, on the record, in jury trials before courts of oyer and terminer, and gaol delivery. *Rex vs. Royce*, 4 *Burr.*, 2084. 1 *Ch. Cr. Law*, 720. The power of trying cases on submission was first given by the act of 1793, ch. 57, which established the court of oyer and terminer. If, then, that court were now in existence and we were dealing with its judgment, it would seem that the objection now taken would not lie. The same power was subsequently conferred on the county courts by the act of 1809, ch. 144, but materially enlarged for the benefit of the accused. We cannot perceive any reason why the same forms of proceeding should not be observed in both courts. All the considerations of time, expense and convenience that applied in the former court, address themselves, with at least equal force, to the county courts, having the same jurisdiction over the subject matter, and more comprehensive powers in its exercise.

It appears that the present traverser entered the plea of not guilty, and "thereupon submitted to the court." He invited no issue to his plea, as would have been the case if he had "put himself upon the country." In the exercise of a legal right, he required the court to examine into all the circumstances of the charge against him; the State was left no alternative, but was compelled, of necessity, to go before the tribunal thus selected, as well upon the facts as upon all questions that might arise on the record. We do not think that a technical issue before the court is necessary in such cases. And, in fact, we are satisfied, after inquiry as to the form of proceeding in many of the courts of this State, that this practice has never obtained. Indeed, if this formal issue were allowed, it might have the effect, in most cases, on strict principles of pleading, of narrowing the scope of the court's inquiry, to such matters only as are cognizable by the jury, and thus deprive the accused of material advantages

designed to be afforded by the legislature, in opening the whole case upon the submission. We overrule the motion in arrest of judgment on all the causes assigned at the bar.

It is insisted, however, that the final judgment must be reversed, because the fine is adjudged to the State, when the act of Assembly awards one-half to the informer and the other to the county or owner, according as the negro may be free or slave. It must be observed that the penalty is to be adjudged and recovered on indictment in the county court. This proceeding must be in the name of the State, and the party must be fined in the name of the State, though other persons are ultimately entitled to the money. There are many acts of Assembly under which informers are entitled to share the fine, and some in which it goes to the county, school funds, &c., but there is no instance, as far as we can discover on examination, in which the fine has not been, on the record, adjudged to the State. There is a form of such a judgment on pages 291, 292, 2 *Ev. Har.*, in which, after adjudging the fine to the State, and the payment of costs for the use of the persons who may be entitled to the same, there is an *order*, "that one half of the said fine be paid to C D, the informer in the prosecution." The latter clause, technically, is no part of the judgment. Being designed for the benefit of the informer, the traverser can have no interest in the mode of making that entry, or whether it be entered or not. But this form has not been always observed, as we find on examination of some of the cases. In suits on bonds to the State, with collateral conditions, the judgment and release are both in the name of the legal plaintiff, although not entitled to one cent of the amount recovered.

But this defect, if it be one, does not concern the traverser. He is interested in having the proceedings so conducted as to protect him against a second prosecution, and this security the indictment abundantly affords. 1 *Gill*, 54. Not being injured by the form of the judgment, it will not be reversed at his instance. 3 *Gill and Johns.*, 450. 9 *Gill*, 439.

*Judgment affirmed with costs.*