( Decided June 26th, 1858.)

---

## George E. Franklin *vs.* The State.

A statute, in its *enacting part,* prohibited any person from selling spirituous liquors to any slave, "*unless upon the written order* of his or her master, mistress, or owner." An indictment, under this act, charged a party with selling liquor to a slave, "*who* then and there *did not have a written order* of his master, mistress, or owner, authorizing the said sale." HELD:

That this indictment was defective in not sufficiently negativing the *existence* of the written order; it is not enough to negative the possession of the order by the slave, but it must appear affirmatively on the face of the indictment that the act of the traverser was not done *upon* such order.

The constitutional provision that, "In the trial of all criminal cases, *the jury shall be judges of law as well as fact,*" is merely *declaratory,* and has not altered the pre-existing law regulating the powers of the court and jury in criminal cases.

The jury, in a criminal case, have no right to judge of the *constitutionality* of an act of Assembly, and it is proper for the court to prevent counsel for the traverser from arguing that question before the jury.

Error to the Circuit Court for Anne Arundel county.

The plaintiff in error was indicted for a violation of the act of 1858, ch. 55, passed on the 17th of February 1858, entitled

"An act to prohibit the *sale* of intoxicating liquors in the city of Annapolis, or within five miles thereof, to minors and people of color."

The 1st section of this law enacts, "That from and after the first day of April next, it shall not be lawful for any person or persons, *whether licensed to sell spirituous liquors or not*, to sell, dispose of, barter, *or give*, within the corporate limits of the city of Annapolis, or within five miles thereof, any spirituous or fermented liquors or cordials of any kind, or in any quantity whatever, to any youth or minor under the age of twenty-one years, *without the written order* of the parents and guardian of such minor, nor to any free negro or mulatto, *except upon the certificate* of three respectable freeholders of the city of Annapolis, that said free negro or mulatto is of good and temperate habits, and of moral character, *or the written order* of some physician; nor to any negro or mulatto slave, *unless upon the like order of his or her master, mistress, or owner,*" and then fixes a fine as a penalty.

The 2nd and 3rd sections provide for the suppression of the licenses of such persons as, having licenses, violate the provisions of this act. The 4th section provides that any one order mentioned in the first section, shall not be valid for a longer period than two days from its date. The 5th, 6th and 7th sections require the court to give the act in charge to the grand jury, the sheriff, and constables, to exercise proper diligence to detect violations of the law, give one-half the fine to the informer, and make him a competent witness.

The 8th section enacts, "That a copy of this act shall be furnished, by the clerk of the circuit court for Anne Arundel county, to each person residing in the city of Annapolis, and within five miles thereof, who shall receive a license under the provisions of this bill, for which he shall receive fifty cents; and the clerk shall, before he delivers any license to the parties aforesaid, administer and endorse upon the said license the following oath or affirmation: I, A. B., do swear upon the Holy Evangely of Almighty God, that I will faithfully comply with the provisions of this act." The 9th section provides "that this act shall take effect from and after the first day of April, eighteen hundred and fifty-eight."

*Franklin vs. The State.*

The indictment charges that the plaintiff in error, "being then and there a person having a license authorizing the sale of sqirituous liquors, on or about the fifteenth day of April, in the year of our Lord eighteen hundred and fifty-eight, with force and arms, at the county aforesaid, within the corporate limits of the city of Annapolis, unlawfully did sell and dispose of a certain quantity of spirituous liquor, to wit, one pint of spirituous liquor commonly called whiskey, to Samuel Jones, slave of Miss Ellen Stockett, and who then and there did not have a written order of his master, mistress, or owner, authorizing the said sale of the said quantity of spirituous liquor as aforesaid, to the said Samuel Jones, contrary," &c.

To this indictment the plaintiff in error filed a *general demurrer*, which the court *(Jonathan Pinkney*, special judge,) overruled, and the case having been tried before a jury upon the plea of *non cul*, and a verdict of guilty rendered, the traverser moved in arrest of judgment for the following reasons:

1st. Because, at the trial of the case, the counsel for the traverser undertook to argue before the jury that the act of 1858, ch. 55, was unconstitutional, and thereupon Judge Pinkney objected, and said that the counsel could not discuss a constitutional question before the jury, and told the jury that though they were made, by the constitution, judges of the law and fact in criminal cases, they had no right to determine a constitutional question, or whether said law was void, if they believed it was unconstitutional. This ruling of the judge is placed on the record so that in the event of this case being carried to the Court of Appeals by writ of error, the point of his ruling may be corrected by said court.

2nd. Because the traverser obtained a retailer's license and a retailer's liquor license, under the act of 1856, ch. 353, which authorized him to sell to all persons not excepted by the said licenses and the then existing laws.

3rd. Because the court permitted the State to prove by the clerk, by reference to his record, that the traverser had obtained such licenses, though the counsel for the traverser objected to the admissibility of such testimony, because no notice had been

given to him to produce the licenses, and further, having without notice produced them, he insists that said original licenses are the best, and, therefore, the only admissible evidence. (These licenses, which are set out with this reason, are in the usual form, were issued on the 9th of May 1857, and purport "to continue until the first day of May next.")

The court overruled the motion and imposed the fine prescribed by the act, and to correct this judgment the present writ of error was sued out by the traverser.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Jas. S. Franklin* and *Thos. G. Pratt* for the plaintiff in error:

1st. The court below erred in refusing to permit the counsel for the accused to argue to the jury the invalidity of the act under which he was indicted. By the 5th sec., art. 10, of the constitution, it is provided, that "In the trial of all criminal cases, the jury shall be the judges of the law as well as fact." Independent of this constitutional provision, the jury were the exclusive judges of all facts, and by this provision they are *as well* the exclusive judges of the law, and necessarily of the *validity*, as well as of the meaning and construction of the law. The Debates of the Convention which framed the constitution, (2 *vol.*, 767, 768,) show the views there presented on this point, but we are not to speculate as to what were the views of that body, or what they *ought* to have done; we can only look to what they *have done*. In *State vs. Mace*, 5 *Md. Rep.*, 350, and *Manly vs. The State*, 7 *Md. Rep.*, 147, this court has said, that the words of the constitution must be construed in the sense in which the *people* who adopted it *understood them*. Now both the *people* and the *convention* are presumed to have known what the law on this subject was at the time this clause was framed and adopted, (26 *Ala. Rep.*, 326, *Duramus vs. Harrison*,) and prior to this time, the judges had the power to judge of the law, to say to the jury such is the law, and that the law made such and such offences crimes, that such and

such acts came within the law, but had no power to *enforce* their instructions in case of an *acquittal*. The jury had power to disregard, if they chose, the instructions of the court, and to judge of the law for themselves, and, in this sense, they were said to be, in criminal cases, judges of *the law and fact*. 3 *Johns. Cases*, 364 to 376, *People vs. Croswell.* 18 *Maine*, 346, *State vs. Snow.* 4 *Blackford*, 150, *Warren vs. The State.* The constitution designed to go further, and enact something more, to give to the jury some further powers, and every *voter* when *voting* upon this constitution, supposed he was conferring upon the jury, *in all criminal cases*, the *exclusive judgment of the law*. There is no exception made in the clause, and the court can make none.

2nd. The act of 1858, ch. 55, is unconstitutional, 1st, because it embraces more than one subject, and the subjects embraced are not described in the title, as required by the 17th sec. of art. 3rd of the constitution. The *title* is, ''An act to prohibit *the sale* of intoxicating liquors,'' &c. The *body* of the law prohibits *disposing of*, and *bartering*, and *giving* intoxicating liquors. It also includes *persons not licensed*, when by a previous law such were prohibited from selling such articles. The subjects of the law are, therefore, more than *one*, and are not disclosed by the title. 2nd, because the plaintiff in error, as a licensed retailer, under the act of 1856, ch. 353, acquired from the State, for the same consideration, the same privileges which a similar license conferred upon any other person in any other part of the State, and the Legislature possessed no power to discriminate even *prospectively*, in favor of a class of merchants in one part of the State or county, over the same class in a different locality, (5 *Arkansas*, 204, *Pike vs. The State;*) and, moreover, under his license he had acquired a *vested right* to deal, *until the 1st of May* 1858, in all articles and with all persons sanctioned by the act of 1856, ch. 353, or not prohibited by that act, or by other acts then in force, and the attempt of the Legislature, by the act of 1858, ch. 55, (if that act is to be construed as operating upon *existing licenses*,) to deprive him of this vested right, was extra-constitutional and void. 1 *Bl. Com.*, 44. 2 *Inst.*, 184.

Franklin *vs.* The State.

1 *Kent,* 418, 419. *Dwarris on Statutes,* 664, 681. 7 *G. &* *J.,* 7, *Norris vs. Trustees of Abington Academy. R. M. Charlton's Rep.,* 324, *Forsyth vs. Marbury.* 3rd, because the 31st and 34th secs. of the 3rd art. of the constitution, and the acts of Assembly providing for the publication of the laws, are to be construed in *pari materia,* and no law could constitutionally operate until published, and, consequently, this act of 1858, which provides no time for its publication, and which is made to take effect before publication, is unjust, oppressive, and against the spirit of the constitution, and, therefore, void. *R. M. Charlton's Rep.,* 333. 9 *Gill,* 309, *Baugher vs. Nelson.* 9 *G. & J.,* 412, *Regents, &c., vs. Williams.* 1 *Paine's Rep.,* 23, *Ship Cotton Planter.* 1 *Greene, (Iowa Rep.,)* 68, *Calkin vs. The State. Dwarris on Statutes,* 664, 682.

3rd. But if the law is not, for these reasons, unconstitutional, it does not, by its true construction, operate upon *existing licenses,* and the court will so construe it as to give it a *prospective* operation, in so far as it is to affect those who had already obtained licenses under previous laws, making it operative as to them only when their licenses expired, (1 *Ohio State Rep.,* 15, *Hirn vs. The State,*) and the 8th section of the act seems fully to warrant this interpretation of it.

4th. In so far as it operates upon parties having licenses, it is *repealed* by the subsequent act of 1858, ch. 414, passed at the same session, which is a general license law, and authorizes *all persons* to take out licenses thereunder, upon the terms and conditions *only* therein prescribed.

5th. The indictment is defective, because it does not aver that the *slave* therein mentioned was either a *negro* or *mulatto* slave, as required to constitute the offence under the act. By our laws, a *white man* who marries a negro woman may be a slave; and in indictments for statutory offences, especially in cases of *mala prohibita,* the language of the act must be strictly followed, nor will any defect of this kind be cured by verdict. *Wharton's Cr. Law,* 132 to 136. *Arch. Cr. Pl.,* 46 to 48. 1 *Chitty's Cr. Law,* 282, 286.

6th. The indictment is also defective, because it does not sufficiently negative the existence of a written order, autho-

31    v. 12.

rizing the sale by the traverser. It charges that *the slave* did not have the order authorizing him to buy, whereas the law requires that the dealer should not have the order authorizing him to sell. The case of *State vs. Nutwell*, 1 *Gill*, 54, is conclusive on this point.

*James Revell*, State's Attorney for Anne Arundel county, for the State:

1st. The question, whether the court below erred in refusing to permit the counsel for the traverser to argue to the jury that the law under which this indictment was framed, was unconstitutional, is not before this court for review, because *this reason*, assigned to sustain the motion in arrest, *forms no part of the record*, and a judgment can only be arrested for matter appearing *on the record*. But if the question is open for review here, there was no error in the court's action in this respect. The constitutional provision, that, "in the trial of all criminal cases, the jury shall be judges of law as well as fact," is merely *declaratory* of what the common law was on this subject, and confers upon the jury no *new* powers. The jury have the right to judge of the law for themselves, and apply it to the facts proved before them, but they never had the power to say that a law under which an indictment was framed, was *unconstitutional*. The most strenuous advocates for the rights of juries never have gone to such a length as this. Mr. Justice Baldwin, who went as far as any judge ever did in sustaining the right of juries to be judges of law in criminal cases, in the case of *United States vs. Shive*, 1 *Bald. C. C. Rep.*, 512, which was an indictment for counterfeiting United States' bank notes, *refused* to permit the jury to be judges of the *constitutionality* of the bank's charter, or the counsel for the traverser to argue such a question before them.

2nd. There was no error in overruling the demurrer, 1st, because the act of 1858, ch. 55, is, in all respects, constitutional and valid. The Legislature had the clear right to pass such a law under the 13th art. of the Bill of Rights, which declares that "fines, duties or taxes may properly and justly be imposed or laid on persons or property, with a *political view*,

for the *good government* and *benefit* of the *community.*" 11 *Md. Rep.*, 525, *Keller vs. The State.* 3 *Gill*, 1, *Burton, et al., vs. The State.* It is a law which the State has the power to pass, in exercise of the *right* to regulate its internal police, and every thing that relates to the *morals* and *health* of the community. It does not infringe the provision of the 17th sec. of the 3rd art. of the constitution, in reference to *title* and *subject* of laws, (7 *Md. Rep.*, 151, *Davis vs. The State;* 11 *Md. Rep.*, 525,) and though a *penal law*, the intention of the law makers must govern in its construction, and it is not to be construed so strictly as to defeat the *obvious intention* of the Legislature. 5 *Wheat.*, 95, *United States vs. Wiltberger.* 2 *Pet.*, 367, *American Fur Co. vs. The United States.* Nor does it interfere with any *vested rights* of parties having licenses, for, "in the nature of things, there can be no vested right to violate a *moral* duty, or to resist the performance of a *moral obligation;* there can be no vested right to do a wrong." 9 *Gill*, 299, *Baugher vs. Nelson.* 2nd, because the indictment sufficiently charges that the sale was to a *slave*, and sufficiently *negatives* the written order, the words of the indictment being, in this particular, in the *language of the act*, and are, therefore, sufficient. 2 *Md. Rep.*, 201, *Rawlings vs. The State.* 3 *G. & J.*, 8, *State vs. Dent.* 12 *G. & J.*, 260, *State vs. Price.*

Le Grand, C. J., delivered the following opinion.

Many questions were argued at the bar not important to be decided, nor indeed presented by the record. But, looking to the policy of the act of 1858, ch. 55, and the reasonable anxiety of the community upon which it is to operate, to ascertain by judicial interpretation its true meaning, I will express my opinion in regard to some matters not absolutely necessary to the decision of this particular case. I do this because I believe the public have the right to expect it of the appellate court, and, also, because it will subserve the general good by putting to rest quibbles and doubts, which, unless quieted by proper authority, tend to the annulment of the legislative will.

The plaintiff in error was indicted, he being a person hav-

ing a license authorising the sale of spirituous liquors, that he, "on or about the fifteenth day of April, in the year of our Lord, eighteen hundred and fifty-eight, with force and arms, at the county aforesaid, within the corporate limits of the city of Annapolis, unlawfully did sell and dispose of a certain quantity of spirituous liquor, to wit, one pint of spirituous liquor, commonly called whiskey, to Samuel Jones, slave of Miss Ellen Stockett, and who then and there did not have a written order of his master, mistress or owner, authorizing the said sale of the said quantity of spirituous liquor as aforesaid, to the said Samuel Jones," &c., &c. To this indictment the plaintiff demurred. The court overruled the demurrer, when a jury was sworn, who returned a verdict of guilty, upon which judgment was entered. A motion in arrest of judgment was filed, assigning several reasons in support thereof.

If for no other reason, than that *the indictment does not sufficiently negative the existence of a written order authorising the sale by the traverser*, I think the demurrer should have been sustained. The case of the *State vs. Nutwell*, 1 *Gill*, 54, is clear to this point. In that case, the party had been indicted under the act of 1817, ch. 227, which made it unlawful for any licensed retailer or other person residing in certain counties, "accustomed to make and sell distilled spirits or other liquors, to suffer any free negro or mulatto, or any negro or mulatto servant or slave, to be in his, her or their store-house, or other house, wherein he, she or they may be accustomed to sell distilled spirits or other liquors, between sunset in the evening and sunrise of the succeeding morning." The act, however, contained a provision by which it was provided, that the act should not extend to the case of such servant or slave as should "have a written order or license for that purpose, from his master, mistress, overseer or other person, in whose employment he might be with the consent of his owner." The indictment after other averments declares as follows: *"the said slave then and there not having a written order or license for that purpose from his master, against the act,"* &c. In the case now before the court, the words are as follows: *"and who* (that is the slave) *then and there did not have a written order of his*

*master, mistress or owner, authorizing the said sale,"* &c.
By a comparison, it will be perceived that the language in
both instances is of the same import, although not identical,
and therefore that of the court in *State vs. Nutwell*, is
equally applicable to this.   "The omission," say the court, "to
exclude a license by the necessary averment of a want of one,
was a fatal defect; the non-existence of a license being an es-
sential ingredient in the constitution of the offence, according
to the true and sound construction of the act of Assembly,
upon which the prosecution was founded."   In this case, the
words of the statute are not followed, and in this particular, it
is unlike that of the *State vs. Rawlings*, 2 *Md. Rep.*, 201.  With-
out inquiring as to the sufficiency of the other parts of the in-
dictment, the defect which I have stated justifies the reversal
of the judgment.

For the reasons I have given, I will now indicate my views
in regard to some of the other questions discussed at the bar.
It is stated, as one of the reasons for an arrest of the judgment,
that the court refused to allow the counsel of traverser to dis-
cuss, before the jury, the *constitutionality* of the act of Assem-
bly.   Although the question is not presented by the record,
it is yet proper the meaning of the words of the 5th section of
the 10th article of the constitution should be expressed.   This
is my decided opinion, for, whatever privilege they give to the
party charged with crime, he ought to enjoy without being
subjected to expensive prosecutions of appeals and writs of
error.   The language is: "In the trial of all criminal cases
the jury shall be the judges of law as well as fact."

It was argued, that the true interpretation of these words
authorized the jury to judge of the constitutionality of the act
of Assembly.   In this opinion I do not concur.   The debates
which took place in the Convention that framed the Constitu-
tion, show what were the reasons that induced the adoption of
the section.   It is apparent from these debates, that opposing
views as to the powers of a jury in a criminal case, prevailed
in different parts of the State, and, that to guard in the future
against such conflict, the provision was inserted in the consti-
tution.   It was well known that some members, both of the

judiciary and the profession, held, that juries in criminal cases were the judges of law as well as fact, whilst others held a directly contrary opinion. It is not now important to inquire on which side there was a preponderance of authority and reason. When the meaning of the terms are fixed, there is an end to controversy in regard to the relative powers of court and jury.

So far as I know, there is no instance in which a court admitted that the words, "judges of law as well as fact," authorized the jury to decide on the constitutionality of a law. With those who insisted upon the enlarged power conferred by the words in our constitution, there was no pretence that it authorized a judgment by a jury of the constitutionality of an act of Congress or of the State Legislature. All they contended for was, that in a criminal case the jury were not bound to abide by the interpretation of the court of the meaning of a law, but were free to construe and apply it according to their own judgments. They never pretended the jury had the right to decide on the constitutionality of an act defining murder, arson or any other crime, but that they had the right to affix their own meaning on the particular law, and to determine for themselves, whether the facts proven brought the traverser within that meaning. The words in the constitution have no greater significance since their incorporation into the organic law than they had previously, and I think I have given to them the broadest latitude ever sanctioned or seriously countenanced by any respectable authority.

Without determining whether under the police power conferred by the 13th section of the Bill of Rights, the Legislature, "with a political view," and "for the good government and benefit of the community," could, before the expiration of a license granted by the State, superadd additional penalties or prescribe additional limitations, I am of opinion, that whatever may be the correct view in this regard, in the passage of the act of 1858, ch. 55, no such power was exercised. In my opinion, the act was to go into operation on the first day of April, but not to operate on those whose licenses would not expire until May following. The act contemplated the party

should have a license, and that he should take an oath to observe the directions of the act.   Of course I do not now allude to persons other than those having a license; a different class of reasons apply to them.   The case before the court is that of a person having a license, and it is clear to my mind, that whilst the purpose of the act was to allow persons to take out a license under it, on and after the first day of April, it was yet no part of its scope to qualify the privilege which, by its terms, would not expire until the first day of May.

I entertain no doubt the Legislature has the power to forbid the sale of spirituous liquors to minors and slaves.   A sale necessarily implies a contract, which, strictly speaking, neither an infant or slave can make, and therefore, if for no other reason, a party dealing only by virtue of a license has no just right to insist, it is an abridgment of his rights to prevent him from trading with either infants or slaves.

The act makes it unlawful, within the prescribed limits, "to sell, *dispose of, barter* or *give,*" any spirituous liquors, &c. Now I understand all these words as intended but to express one idea, that, for profit, liquor should not be given to the persons mentioned.

There are some historical facts so notorious, that courts are bound to notice and apply them when interpreting the language and purposes of the Legislature.   To ignore them, would be inevitably to superinduce one of two results, both of which, in their nature, are productive of great mischief, that is to say, to make it incumbent for the legislative body to set out, by way of preamble, a long detail of facts and reasons, with which the entire community are perfectly familiar, or to have their action frittered away by philological niceties, more noticeable for their ingenuity than their practical good sense.   The whole nation knows that many laws, especially in the Eastern states, were some years since passed, restraining in some instances, and in others, absolutely forbidding the sale of intoxicating liquors, and that one of the most favored devices resorted to, to avoid the penalty of the law, was to sell some trifle for a price bearing no proper proportion to its value, and then, to "*give*" the liquor.   It was to guard against such dis-

creditable evasion, that words other than that of *"sell"* were
employed in legislation, such as *"dispose of"* or *"give,"*
the whole of them, as before observed, having but one object
in view.   In construing any writing, whether it be a law or
anything else, every portion of its language should be con-
strued always with special reference to the subject matter and
its immediate context.   I hold the word "give," as it appears
in the act of 1858, to be as comprehensive, and to mean the
same, as the word "sell."   Every one knows words have dif-
ferent significations according to the association in which they
are found.   Thus, the word "gift" in some connexions, means
*"bounty"* or *"gratuity,"* whilst in others *"to pay."*   A refer-
ence to Todd's, Johnson's and Walker's Dictionary, will show
the following definitions of the verb *"to give,"* and the au-
thorities for the same   " *To pay as price or reward, or in ex-
change.*"—Job ii.   "Is it lawful for us to give tribute unto
Cæsar or no."—Luke xx.   " *To enable,*" Hooker.   " *To pay,*"
Shakespeare.   The meaning of the word "barter" is thus
given, "To *give* any thing in exchange for another," as liquor
for money.   To *"dispose"* is defined as the equivalent of *"to
give."*   And, in Webster, many definitions of the word "give"
are to be found, among which is the following: "to pass or
deliver the property of a thing to another *for an equivalent;*
to pay."   This is nothing more nor less than the description
of a sale.

If I have affixed the correct meaning to the words taken
from the body of the act, (and that I have must be manifest
if the decisions of lexicographers of the greatest repute be of
any authority,) then, there is no efficacy in the suggestion,
that the title does not properly, within the meaning of the 17th
section of the 3rd article of the constitution, describe the sub-
ject matter of the act.   For these reasons I am in favor of the
reversal of the judgment.

Inasmuch as a great deal was said in argument by counsel,
*pro* and *con.*, in regard to the policy of such legislation as the
act of 1858, I will merely observe, that although I have very
strong convictions on the subject, yet, whilst acting in a judi-
cial capacity, I have nothing to do with such considerations;

it is for the legislative branch of the government to decide that question, the judiciary having nothing whatever to do with it.

BARTOL, J., delivered the opinion of this court.

We concur with the Chief Justice, in the propriety of reversing the judgment of the circuit court in this case, upon the ground, that the indictment does not sufficiently negative *the existence* of the *written order* required by the statute.

It is a necessary ingredient of the offence, that the act charged should be done without such written order. The words of the act are, "nor to any negro or mulatto slave, *unless upon* the like order of his or her master, mistress or owner," and being in the enacting part of the statute, must be fully negatived in the indictment. This principle has been recognized in the cases of *The State vs. Nutwell,* 1 *Gill,* 54, and *Rawlings vs. The State,* 2 *Md. Rep.,* 201.

This indictment charges the traverser with selling, &c., "spirituous liquor" to "Samuel Jones, a slave of Miss Ellen Stockett, and *who then and there did not have a written order of his master, mistress or owner,*" &c.

This is not within the statute. It is not enough to negative the possession of the order by the slave; it must appear affirmatively on the face of the indictment, that the act of the traverser was not done *upon* such order.

The phraseology of the act of 1858, ch. 55, is different, in this respect, from that of the act of 1817, ch. 227. In the case of *Rawlings vs. The State,* an indictment under the act of 1817, which negatived the slave's having the written order or license required by that act, was held to be sufficient because it was in the words of the statute. The indictment before us is not in the words of the act of 1858.

We concur also in the views expressed by the Chief Justice, upon the question of the power of the jury in criminal cases, to pass upon the constitutionality of the law, and think that the attempt of the counsel of the traverser to argue that question before the jury, was properly arrested by the circuit court.

In our opinion the constitutional provision on that subject is merely declaratory, and has not altered the pre-existing law regulating the powers of the court and jury in criminal cases.

With reference to the other views expressed in the opinion of the Chief Justice upon the construction of the act of 1858, as there is a difference of opinion among the members of the court, as to some of them, and their determination is not necessary for the decision of the case, we refrain from expressing our views upon them.

*Judgment reversed.*

(Decided July 20th, 1858.)