56 P.(2d) 1134

**STATE v. ANDERSON et al.**

No. 4169.

Supreme Court of New Mexico.

March 23, 1936.

Hervey, Dow, Hill & Hinkle, of Roswell, for appellants.

Frank H. Patton, Atty. Gen., and J. R. Modrall, Asst. Atty. Gen., for the State.

BICKLEY, Justice.

The defendant Anderson is a gardener by trade. The defendant McCarter is an employee of the defendant Anderson. Anderson cultivates twelve acres of ground within the limits of the city of Roswell, where he has a home. He has an investment of about $15,000. The property is surrounded by a forty-inch wire mesh fence, and above the fence about six inches apart there are two or three barbed wires strung. Practically ever since Anderson has been cultivating his garden, he has been annoyed and his property injured by dogs, and he has taken many precautions to protect himself and his property from this nuisance. He has instructed his men to drive stakes in the ground and nail wire to the stakes so as to prevent the dogs digging under as it had been apparent that they were doing. There had been as many as six or eight dogs on this property at one time. Early in these depredations he would fire a shotgun at some of the dogs to frighten them away. Apparently complaints were made at this, and the defendant Anderson received a letter from the district attorney advising him that it was a felony to shoot a firearm within the limits of a settlement. Shortly before the prosecution herein involved, the defendant Anderson found that practically his entire

flock of Belgian hares, which he raised for the market, had been killed, their flesh torn, and the hutches torn to pieces, and the destroyers had left on the ground twenty-eight of the hares. The depredations had apparently been committed by dogs. Anderson tried traps upon the advice of a policeman, and these were successful to the extent that two dogs were caught in the traps and later killed by the city authorities. The traps became ineffective because, as is conjectured, some one threw rocks from outside the inclosure on the triggers of the traps and sprung them. The defendant Anderson made many protests to residents in the settlement near his garden with regard to the depredations committed by dogs. Shortly prior to the occasion giving rise to this prosecution, gangs of dogs had gotten into the garden during the night on several occasions and destroyed the young vegetable plants. Anderson estimates that the damage done to his property by dogs in the spring of 1935 shortly prior to the filing of the information amounted to $500. The defendants, under the impression that they had the right to protect this property from depredations by dogs, and believing other means ineffective, resorted to placing poison in food on Anderson's land inside his fence and hidden away in such a manner that it would have to be found by scent and would not be picked up except by dogs during a trespassing upon his premises. A dog belonging to the prosecuting witness was evidently one of these trespassing animals, as the testimony shows that he appeared on the premises of his owner with a piece of biscuit in his mouth and died some hours later. The defendants were tried upon an information drawn admittedly under the provisions of section 4-102 of the New Mexico Comp.St.Ann.1929, which reads as follows: "Any person who shall wilfully and maliciously kill, maim, disfigure or injure any such dog, cat and domesticated fowl or bird, the property of another, or shall wilfully and maliciously administer poison to any such dog, cat or domesticated fowl or bird, or shall expose any poisonous substance with the intent that the same may be taken or swallowed by them, or shall negligently or carelessly expose any poisonous substance which shall be taken or swallowed by any such dog, cat, or domesticated fowl or bird, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than ten dollars nor more than five hundred, or shall be imprisoned in the county jail for not less than ten days, nor more than six months, or shall suffer both such fine and imprisonment in the discretion of the court."

The defendants were convicted under the first count of the information which was as follows: "First Count: That on April 23, 1935, Arthur Anderson and B. H. McCarter did expose poisonous substances, to-wit, bread poisoned with strychnine, with intent that the same would be taken and swallowed by dogs, contrary to the provisions of Section 4-102, New Mexico Statutes Annotated, 1929 Compilation."

The defendant Anderson was sentenced to sixty days in jail and to pay the costs of the case, and the defendant McCarter was sentenced to thirty days in jail. Motion for new trial was presented by the defendants and denied.

The points relied upon by defendants for reversal, so far as we need to consider them, are thus stated in their brief:

"(a) That the court interpreted that portion of the statute upon which the first count of the indictment is based to be an absolute denunciation of the simple act of exposing poisonous substances with the intent that the same be taken and swallowed by dog or dogs, and refused to consider any question of malice whatsoever, and accordingly so instructed the jury, which was tantamount to instructing them to convict the defendants because there was no denial that the poisonous substances were exposed, and the reasons and purposes therefor were given.

"(b) The court refused to consider any question of defense or protection of the property of the defendants. There is no question that the acts of the defendants was due to their efforts to protect the property of the defendant Anderson and to save it from serious injury and destruction. This was called to the court's attention in a proposed instruction, and in exceptions to the court's instructions, and in the motion for a new trial."

Defendants, by appropriate means, presented these to the trial court, who ruled against them.

The Attorney General, in his brief, calls attention to another statute, section 35-2427 New Mexico Comp.St.Ann.1929, which he says defines the identical offense of which the defendants were convicted, but prescribes a different penalty, making the offense a felony. This section is as follows: "Every person who shall wilfully and maliciously kill, maim, or disfigure any horse, cattle, sheep, goat, dog, mule or ass, the property of another, or wilfully or maliciously administer poison to any such beasts, or expose any poisonous substance, with intent that same may be taken or swallowed by any such beasts, or shall wilfully or maliciously destroy or injure the personal property of another in any manner, or by any means, not particularly mentioned or described in this article, upon the first conviction thereof shall be confined in the county jail not less than six months nor more than fifteen months, or in the penitentiary not to exceed eighteen months, or fined not exceeding five hundred dollars ($500) or suffer both such fine and imprisonment in the discretion of the court; but upon a second conviction of the crime herein defined, or upon any conviction of such crime subsequent to the first conviction thereof, and whether the first conviction had been had in the courts of this or any other state, such person so convicted shall be confined in the penitentiary for not less than two nor more than ten years in the discretion of the court."

The Attorney General, with commendable candor, and with a desire to be fair with the court and the defendants, suggests

that we consider whether this section last quoted repeals by implication the earlier statute so far as it pertains to dogs. Counsel for appellants in their reply brief resist the suggestion and argument of repeal. We will first enter upon a consideration of these propositions presented by the Attorney General. Before taking up a consideration of the statutes, it may be well to make some observations as to the position of the dog in law independent of the statute, such position being fixed by the common-law and court decisions. He has long been recognized as a species of property, yet was early considered of no intrinsic value and did not attain that dignity as such enjoyed by other animals possessing more general desirable qualities. It has been held that property in dogs is of an imperfect or qualified nature, and they may be subjected to peculiar and drastic police regulations by the state without depriving the owner of any federal right. See Nicchia v. New York, 254 U.S. 228, 41 S. Ct. 103, 65 L.Ed. 235, 13 A.L.R. 826. Also deciding that the tendency of dogs to revert to their savage state and become a public menace justifies police regulations for their control. At the common law he was not the subject of larceny. Finally, legislatures and the courts came to recognize in the dog a valuable species of property in some respects, so that they did not tolerate the indiscriminate killing of these animals where they have an owner, but, generally speaking, a dog possessing a dangerous and ferocious nature, such as to make him a common source of danger and annoyance, may be killed and destroyed as a nuisance on the principle that any one has the right at common law to abate a nuisance. And the fact that any one may sue the owner of a vicious dog for an injury received will not take away nor affect the right to destroy the dog as a nuisance. So a rabid dog is said to be a common · and dangerous nuisance, and any one may kill such a dog whenever and wherever found, without being amenable under the law either civilly or criminally. It has been said that the right which every one has to protect himself and others from such a danger is paramount to that of the owner for redress for the value of such dog, and it has been said that any one may lawfully kill a dog which he finds chasing his sheep or other animals or in the act of doing injury to his property. In 3 C.J. Animals, § 501 it is said: "A person has a right to put poison on his premises for the protection of his property, having due regard for the safety of human life, and will not be liable for damages to one whose dog eats the poison while trespassing; but if he places the poison, not to protect his property, but with intent to kill the dog, then he will be liable, unless the dog is one that he has a right to kill."

In Wood v. Stotski, 148 Md. 508, 129 A. 646, 647, 42 A.L.R. 435, the court said: "A landowner is not required to provide a hunting ground or playground for his neighbor and the neighbor's dogs; he may by appropriate means have both kept off,

and may himself use whatever means may be reasonably necessary to prevent injury to persons or property on his land, including the killing of the dogs, if that should prove necessary. The decisions are not in entire agreement in their statements of the legal principles governing the problems which arise, but, according to the weight of authority, a landowner may not kill the dogs merely because they are on his land; that is, when they are not imminently endangering person or property. And the question whether, in a particular case, there was such imminent danger, making it reasonable to kill the dogs, is almost always one for the jury. The burden of proving the justification for killing is upon the defendant." Citing cases.

 It appears that the Territorial Legislature in 1854 enacted a statute relating to "Offenses Against Property." See chapter 4, 1853–54. It covers arson, burglary, larceny, embezzlement, and many other offenses against property. Section 31 of the act was carried forward into the 1915 Code as section 1636 and remained unchanged until 1919, and was as follows: "Every person who shall willfully and maliciously kill, maim, or disfigure any horse, cattle, sheep, goats, or animals of another person, or willfully and maliciously administer poison to any such beasts, or exposes any poisonous substance with intent that the same may be taken or swallowed by them, or shall wilfully and maliciously destroy or injure the personal property of another in any manner, by any means not particularly mentioned or described in this article, shall be punished by imprisonment not more than two years nor less than three months, or by fine not exceeding five hundred dollars nor less than fifty dollars."

The Legislature at its 1912 session, by chapter 38, enacted the statute under which the defendants were charged. The title to it is as follows: "An Act Creating Property in Dogs, Cats and Domesticated Fowl and Birds, Providing Remedies for the Enforcement of such Rights and Providing Punishment for Injury or Destruction of such Animals."

The first section declared: "That dogs, cats and domesticated fowls and birds shall be deemed and considered as personal property, and all remedies given for the recovery of personal property and of damages for injuries thereto are hereby extended to them."

It is apparent that the legislators in 1912 patterned section 2 of the act after section 31 of the 1854 act heretofore quoted. The language defining the offenses in the two sections is substantially the same. In the 1854 act it is the "animals of another person" which are protected, and in the 1912 act it is the "dog, cat and domesticated fowl or bird, *the property of another*" (italics ours), which is protected. In other words, these statutes seem designed for the protection of the owners of the animals or property.

Offenses against the 1912 statute are declared to be misdemeanors, and the punishment is imprisonment in the county jail

not less than ten days nor more than six months or by a fine of not less than $10 nor more than $500 or both such fine and imprisonment in the discretion of the court.

Then the 1919 Legislature, by chapter 82, amended section 1636 of the 1915 Code. Besides some slight change of language it brought "dog, mule or ass" in for the same protection theretofore enjoyed by "horse, cattle, sheep, goat." The punishment for the offenses under it was changed and increased so that by virtue of section 35-103, Comp.Stats.1929 the offense becomes a felony, as such offense may be punishable by imprisonment in the penitentiary. The element of increased punishment for commission of second or subsequent offenses was brought in by amendment. It looks rather plain that the 1919 Legislature took "dog" out of the earlier statute and put it in the new.

In this situation, we think the principles controlling repeals by implication announced in Lewis' Sutherland Statutory Construction, (2d Ed.) § 252, are applicable. It is there stated: "If the same offense, identified by name or otherwise, is altered in degrees or incidents, or if a felony is changed to a misdemeanor, or vice versa, the statute making such changes has the effect to repeal the former statute." See, also, United States v. Tynen, 78 U.S.(11 Wall.) 88, 20 L.Ed. 153. We conclude that section 4-102 in so far as here involved is repealed by chapter 82, Laws 1919 (section 35-2427, Comp.St.1929). That it still has vitality in other respects we do not doubt.

We next consider the contention of the Attorney General that even though the earlier act is repealed, nevertheless, the information being drafted according to the short forms prescribed by the rules promulgated by this court, is sufficient to state an offense under the later statute, and that the language in the charging part of the information "contrary to the provisions of section 4-102, New Mexico Statutes Annotated, 1929 Compilation," should be ignored as surplusage and the information held good and the conviction sustained under the later statute.

It is doubtless true that an information for an offense created by a general statute need not specify by particular reference thereto the statute violated by the acts alleged to be a crime, since the court will take judicial notice thereof. 31 C.J.Ind.& Inf. § 254. But where the statute is specifically referred to, the correct statute in force at the time and under which the proceeding is brought should be designated. 31 C.J.Ind.&Inf. § 255. This would seem to be so, particularly under rule 35-4408 governing indictments and informations as to "charging the offense," which provides: "(2). The indictment or information may refer to a section or subsection of any statute creating the offense charged therein, and in determining the validity or sufficiency of such indictment or information regard shall be had to such reference."

In the case at bar, reference by the pleader to "section 4-102, New Mexico Statutes Annotated, 1929 Compilation" was

doubtless intended to be informative and to piece out the somewhat brief recitals of the charging part of the information.

The Attorney General, however, says that, if there is a misrecital of a statute, it does not avoid the information where the facts stated constitute an offense under any statute. Citing 31 C.J.Ind.&Inf. § 256. We do not think this statement, if correct, is applicable to the case at bar where the short form of information is used and the reference to the statute is relied upon as being in part descriptive of the offense. And it is to be noted that there are no words such as "feloniously" in the information which would give the court and the defendant notice that the accused are charged with the commission of a felony. On the other hand, the reference to the statute employed advises the court and defendants that the accused are charged with .the commission of a misdemeanor. Furthermore, it is to be noted that the count of the information under. which the accused ·were convicted concludes: "Contrary to the provisions of section 4-102, New Mexico Statutes Annotated, 1929 Compilation."

In Rawlings v. State, 2 Md. 201, 202, the Supreme Court decided: · "Where there is a misrecital of a public act which need not be set out, and the indictment would be good without it, if the indictment conclude 'contrary to the form of the act in such case made and provided,' the recital may be rejected as surplusage, but otherwise if the act be referred to in the conclusion as the *said statute.*' "

We are not persuaded that the course of the trial may not have been different had the court and defendants been given notice that the accused were charged and to be tried for commission of a felony, and we cannot therefore say that the error was not prejudicial. In State v. Loveless, 39 N.M. 142, 42 P.(2d) 211, we decided: "Accused may be tried only for offense charged in information." .

From all of the foregoing, we conclude that the judgment is erroneous because based upon a charge of violation of a repealed statute. The judgment is therefore reversed and the cause remanded, with directions to discharge the defendants. Whether it is necessary for us to construe section 35-2427, Comp.St.1929, is not clear, but in view of the fact that it is possible that the defendants might be brought to trial under its provisions, and in view of the conflict in opinion as to the meaning of the recitals of the repealed statute which are essentially like said section 35-2427, we have concluded to express our opinion. .

Counsel for appellants contend that the reading of this statute contemplates that the act of exposing the poisonous substance must be accompanied by a malicious intent. They say that the general rule is with regard to all statutes touching what might be called malicious mischief or the injury or destruction of property, the element of malice must be contemplated. We are impressed with the correctness of this view. It will be observed that in the first lines of · the section, in order to constitute the crime

"kill, maim or disfigure any horse, cattle, sheep, goat, dog, mule or ass, the property of another," the same * * * is required to be "wilfully and maliciously done"; also, in the sentence immediately following the act of administering any poison to any such beast is specifically required to be "wilfully or maliciously" done. Then follows the provision, "or expose any poisonous substance, with intent that same may be taken or swallowed by any such beasts." And then following this is the clause: "Or shall *wilfully or maliciously* destroy or injure the personal property of another in any manner, or by any means, not particularly mentioned or described in this article." (Italics ours.)

We agree with the appellants that this statute is a malicious mischief statute pure and simple, just as the headnotes to the section prepared by the compiler "Malicious injury to animals or property" indicates. It will be seen that in all instances, save the clause separated by comma, "or expose any poisonous substances, with intent that same may be taken or swallowed by any such beasts," it is specifically stated that the offense must be willfully and maliciously done. We think further that it requires no violent employment of the rules of construction to conclude that from the context it was the intention of the Legislature that the words "wilfully or maliciously" were intended to qualify the act of exposing poison with the intention that it be swallowed by such beasts as well as the other acts injurious to property inveighed against by the statute. This stat-

ute, so far as the provisions now being considered are concerned, has been in force for more than three-quarters of a century, during much of which time it has been common practice for ranchmen and perhaps farmers and other landowners in extreme cases to use poison to destroy predatory animals upon their property. By chapter 119, Laws of 1919 (4-1301 et seq. Comp.St.1929), it is provided that the state of New Mexico will co-operate with the Bureau of Biological Survey of the United States Department of Agriculture in destroying predatory wild animals and rodent pests in the interest of the protection of crops and livestock and improvement of range conditions. It does not seem likely that the Legislature, in the enactment under consideration, intended that the owners of gardens and other property should be at the mercy of predatory dogs and other animals even though they had become domesticated. This inference is given support by the fact that the original enactment of 1854 in section 35 provided that "Every person who shall wilfully commit any trespass, by entering upon the garden, orchard, vineyard, or any other improved land belonging to another, without the permission of the owner thereof, with intent to cut, take, carry away, destroy, or injure the trees, grain, grass, hay, fruit, or vegetables there growing, shall be punished by fine not exceeding $25.00 nor less than $3.00."

Surely it was not the intention when enacting the statute for the protection of the animals of another to imply that persons who willfully committed trespasses upon

gardens were guilty of a crime, and that the beasts of such persons could with impunity commit such trespasses. In 25 R. C.L.Statutes, § 257, it is said: "If, giving to the words of an act their literal or natural meaning, the conclusion reached would be unreasonable or absurd, some other meaning within the reasonable scope of the words may be adopted to avoid that result, if it appears that such other meaning may probably have been the one intended. Thus, a statute making it a crime to shoot a person with intent to kill, without reference to whether the shooting is done wilfully or not, is not to be so construed as to cut off the law of self defense or so that one may be found guilty under the act who has committed no offense for which he should be punished; it is to be in reference to established principles so as not to sanction an injustice and a wrong or a consequence utterly absurd. An ancient and oft quoted instance of absurdity avoided by construction is the judgment mentioned by Puffendorf that the Bolognian law which exacted that 'whoever drew blood in the streets should be punished with the utmost severity' did not extend to the surgeon who opened the vein of a person that fell down in the street in a fit. Another is a ruling cited by Plowden that the statute of 1 Edward II which enacted that a prisoner who broke prison should be guilty of felony did not extend to a prisoner who broke out when the prison was on fire, 'for he is not to be hanged because he would not stay to be burnt.' These instances were cited in what is perhaps the leading American case exemplifying the rule that 'all laws should receive a sensible construction,' wherein a federal statute punishing any person who 'shall knowingly and wilfully obstruct or retard the passage of the mail, or of any driver or carrier, or of any horse or carriage carrying the same,' was held inapplicable to an officer who temporarily detained the mail by the arrest of its carrier upon a bench warrant issued by a state court of competent jurisdiction upon an indictment found therein for murder."

The Attorney General, in resistance to these arguments, suggests that willfully and maliciously were omitted from the clause against exposing any substance with intent that the same be taken or swallowed by any such beasts because the exposure of poison in neighborhoods and vicinities where persons, and particularly children, might accidently find and eat the poisonous substances would be a menace to the public. The Legislature might have passed a statute having for its aim the avoidance of unforeseen casualties arising from persons taking or swallowing such poisonous substances exposed by others, but we do not think the statute under consideration was so designed. The second section of 27 & 28 Vict. c. 111 affords an illustration of a statute having for its purpose that suggested by the Attorney General, and is found quoted in Daniel v. Janes, 2 C.P.Rep. 351, as follows: "every person who shall knowingly and wilfully set, lay, put, or place, or cause to be set, laid, put, or placed in or upon any land any

flesh or meat which has been mixed with or steeped in or impregnated with poison or any poisonous ingredient so as to render such flesh or meat poisonous and calculated to destroy life, shall, upon a summary conviction thereof, forfeit any sum not exceeding 10 L., to be recovered in the manner provided by the Poisoned Grain Prohibition Act, 1863."

It will be observed that the intent, whether malicious or otherwise, that the same be taken or swallowed by any person is absent from this statute. Furthermore, under the New Mexico statute under consideration, apparently it is no offense to expose poisonous substances unless coupled with the intent that same be taken or swallowed by the beasts enumerated. The beasts so enumerated must be "the property of another" in order to be entitled to the protection of the statute. Hence it may be questioned whether it is an offense under the statute to injure beasts not owned by any person. Furthermore, it would seem singular that the absence of willfulness or malice of one accused of administering poison to a dog or other enumerated animal could be established as a defense by a showing of the necessity for the destruction of such animal for the defense of the person or property of the accused, and yet such defense could not be pleaded as against a charge of having exposed poisonous substance with intent that the same be taken or swallowed by such dog or other animal, even though the guilty intent were never effectuated.

From all of the foregoing, we conclude that the words "wilfully or maliciously" qualifying the phrase "administer poison to any such beasts" also qualify the phrase "or expose any poisonous substance, with intent that same may be taken or swallowed by any such beasts."

The judgment is reversed, and the cause remanded, with direction that the defendants be discharged.

It is so ordered.

SADLER, C. J., and HUDSPETH, BRICE, and ZINN, JJ., concur.